# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: October 19, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * | | |
| AMY MORENO, * | | Unpublished |
| * | | |
| Petitioner, * | | No. 19-170V |
| * | | |
| v. * | | Special Master Gowen |
| * | | |
| SECRETARY OF HEALTH * | | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, * | | Reasonable basis. |
| * | | |
| Respondent. * | | |
| * * * * * * * * * * * * | | |

*Amy A. Senerth,* Muller Brazil, LLP, Dresher, PA, for petitioner.
*Darryl R. Wishard,* U.S. Department of Justice, Washington, D.C., for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS

On June 3, 2020, Amy Moreno ("petitioner") filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorney Fees ("Fees App.") (ECF No. 27). For the reasons set forth below, petitioner's motion for attorneys' fees and costs is **DENIED.**

### I.     Procedural History

On January 31, 2019, petitioner filed a petition pursuant to the National Vaccine Injury Compensation Program. Petition (ECF No. 1). Petitioner claimed that she suffered Guillain Barre syndrome ("GBS") following the receipt of receiving the Tetanus-diphtheria-pertussis ("Tdap") and influenza ("flu") vaccines on February 11, 2016. Petition at Preamble. With her petition, petitioner filed medical records and proof of vaccination. *See* Petitioner Exhibits ("Pet. Ex.") 1-7. On February 27, 2019, petitioner filed additional medical records. Pet. Ex. 6 (ECF No. 7). Respondent filed a status report on March 27, 2019, requesting that petitioner file additional medical records, including pre-vaccination records and "any medical records providing proof that petitioner suffered from the residual effects of her alleged vaccine injury for more than six months." Respondent ("Resp.") Status Report (ECF No. 8).

The undersigned issued an order requiring petitioner to file the requested medical records on March 28, 2019. *See* Scheduling Order (ECF No. 9). From March 28, 2019 until September 16, 2019, petitioner attempted to locate additional medical records and had requested numerous extensions of time to file the outstanding medical records. On September 16, 2019, petitioner filed a status report stating that "there are no additional records," and "Counsel for petitioner requests 30 days to file a status report updating this Court on how she wishes to proceed." Pet. Status Report (ECF No. 14). Petitioner was granted until October 18, 2019 to file a status report indicating how she wanted to proceed. Scheduling Order (ECF No. 15).

On November 21, 2019, petitioner filed a status report stating, "Counsel for petitioner requests 30 days to file a motion for a ruling on the record or withdraw her claim." Pet. Status Report (ECF No. 18). I issued an order on November 22, 2019, granting petitioner's request and ordering her to file the appropriate motion by December 23, 2019. Scheduling Order (Non-PDF), issued Nov. 22, 2019. On January 16, 2020, petitioner requested additional time to file the appropriate motion for a decision dismissing her claim or submitting additional evidence demonstrating that her injury lasted for six months or longer. Pet. Motion ("Mot.") for Extension of Time (ECF No. 19). A non-pdf order was entered granting petitioner's request, ordering her to file the appropriate motion or documentation by January 27, 2020. Order (Non-PDF), issued Jan. 17, 2020.

After petitioner missed the January 27, 2020 deadline, respondent filed a Motion for an Order to Show Cause on February 5, 2020. Resp. Mot. for Order to Show Cause. Respondent stated that "Since March 27, 2019, petitioner received four extension of time from the Court to file evidence supporting her petition. However, petitioner has filed no additional exhibits or evidence." *Id.* at 1. Respondent also stated, "Adequate satisfaction of the Act's sequelae requirement is a necessary element of petitioner's *prima facie* case. In the interest of judicial efficiency, this factual issue should be resolved before the parties address the issue of vaccine causation." *Id.* at 2. Respondent requested an Order to Show Cause be issued, directing petitioner to demonstrate that she can overcome the evidentiary deficiency. *Id.*

I granted respondent's motion and issued an Order to Show Cause on February 6, 2020. The Order to Show Cause required petitioner to produce additional medical records to establish the residual effects of her alleged injury or file a motion for a dismissal decision by March 6, 2020. Order to Show Cause (ECF No. 21).

On February 19, 2020, petitioner filed a motion to dismiss the petition. Pet. Mot. to Dismiss (ECF No. 22). The petition was dismissed for insufficient proof on February 20, 2020. *See* Decision (ECF No. 23). Judgement entered on March 24, 2020 (ECF NO. 25).

On June 3, 2020, petitioner filed the instant motion for attorneys' fees and costs. Fees App. Petitioner requested $11,018.50 in attorneys' fees and $467.13 in costs, for a total of $11,485.63. Fees App. at 2.

The same day, respondent filed a response, in which he opposes the motion for attorneys' fees and costs on the grounds that petitioner has failed to establish reasonable basis for her claim and therefore is not entitled to receive an award of attorneys' fees and costs under the Vaccine Act. Resp. Response at 1 (ECF No. 28).

On June 12, 2020, petitioner filed a reply, arguing that there was reasonable basis for her claim and she should receive reasonable attorneys' fees and costs. Pet. Reply at 8. This matter is now ripe for adjudication.

## II. Entitlement to Attorneys' Fees and Costs

### A. Legal Standard

The Vaccine Act provides that reasonable attorney's fees and costs "shall be awarded" for a petition that results in compensation. § 15(e)(1)(A)-(B). Even when compensation is not awarded, reasonable attorneys' fees and costs "may" be awarded "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for which the claim was brought." § 15(e)(1). The Federal Circuit has reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

"Good faith" and "reasonable basis" are two distinct requirements. *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith" is a subjective test, satisfied through subjective evidence. *Cottingham v. Sec'y of Health & Human Servs.,* 971 F.3d 1337 (2020).

Reasonable basis, on the other hand is an objective test, satisfied through objective evidence. *Cottingham,* 971 F. 3d at 1344 (citing *Simmons,* 875 F.3d at 635). This evaluation may include various objective factors such as "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289-90 (2018). However, a Special Master may not consider subjective evidence, such as attorney conduct and a looming statute of limitations in a reasonable basis analysis. *Cottingham* at 1345. "[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Human Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Medical records can support causation even where the records provide only circumstantial evidence of causation. *Harding v. Sec'y of Health & Human Servs.,* 146 Fed. Cl. 381, 403 (Fed. Cl. 2019). A petitioner must furnish some evidence in support of the claim. *Bekiaris v. Sec'y of Health & Human Servs.*, 140 Fed. Cl. 108, 115 (2018) (reasoning that the petitioner must "adduce medical evidence going to causation beyond temporal proximity"). The burden of proof to establish reasonable basis for attorney fees, however, is lower than the preponderant evidence standard required to prove entitlement to compensation. *Cottingham* at 1346 (citing *Chuisano,* 116 F. Cl. at 287). More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis. *Id.*

Reasonable basis may exist at the time a claim is filed but dissipate as the case progresses. *R.K. v. Sec'y of Health & Human Servs.*, 760 Fed. Appx. 1010, 1012 (Fed. Cir. March 15, 2019) (citing *Perreira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994) for the holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). "Petitioners' counsel have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 574

3

(2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Human Servs.*, 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Human Servs.*, 128 Fed. Cl. 724, 727 (2016)).

### B. Analysis

#### 1. Objective Evidence Filed

Petitioner alleged that as a result of receiving her Tdap and flu vaccinations on February 11, 2016, she developed Guillain-Barré syndrome ("GBS"). Petition at Preamble. With her petition, petitioner submitted a record of vaccine administration, medical records from Kaiser Permanente, Riverside Medical Center, Sun City Medical Partners and affidavit. *See* Pet. Exs. 1-5; Pet. Reply at 1.

On February 16, 2016, petitioner called her primary care physician to complain of back pain which was "unrelieved by a heating pad and ibuprofen." Pet. Ex. 2 at 45. Two days later, she presented to the emergency department complaining of lower abdominal pain and back pain that had been going on for three days. Pet. Ex. 2 at 56. Petitioner reported a history of ovarian cysts and indicated the pain was the same. *Id.* A physical exam showed petitioner had tenderness in the lower quadrants of her abdomen, but everything else was normal. *Id.* at 58. Petitioner was given morphine and medication to control nausea. *Id.* at 61. Her tests results were normal. *Id.*

Two days later, petitioner had an appointment with Dr. Peter Gale. Pet. Ex. 2 at 113. At this appointment petitioner complained of moderately to severe back pain located at the bilateral, paralumbar region. *Id.* She indicated that she, "Initially felt a warm sensation radiating from groin to anterior knee area + numbness radiating from lower back to bilateral ankles +progressive weakness + recurrent back spasms." *Id.* Dr. Gale noted that petitioner had the Tdap and flu vaccines 8 days ago and that her symptoms started 2-3 days after that visit. *Id.* He diagnosed petitioner with "possible reaction to recent vaccine administration," and "possible Guillain-Barré," and recommended she go to the Moreno Valley Emergency Department for a spinal tap and admission for further monitoring. *Id.* at 114.

At the emergency department on February 20, 2016, petitioner exhibited tenderness on her lumbar back and was unable to perform straight leg raises. Pet. Ex. 2 at 132. She also had no recorded sensory deficits and her reflexes were 1 out of 4 in bilateral lower extremities. *Id.* Petitioner had an MRI of her lumbar and thoracic spine to rule out transverse myelitis. *Id.* at 136. The MRI of her lumbar spine showed "L5-S1 disc desiccation. Mild broad-based central dorsal annular bulging with central dorsal annular tear. Patent neural foramina. Patent central canal. Mild bilateral facet arthritis." Pet. Ex. 2 at 381. Petitioner's CSF protein and glucose levels were normal. *Id.* at 143. Petitioner was discharged on February 22, 2016. Upon discharge, petitioner was assessed with the following:

> Bilateral lower extremity weakness. MRI lumbar spin showed L5-S1 disc desiccation with mild broad based central dorsal annular bulging with central dorsal annular tear….MRI thoracic spine showed osseous hemangioma at T11, otherwise unremarkable….Degenerative disc disease L5-S1 with mild posterior disc bulging but no

4

central spinal or foraminal stenosis.  Focal hemangioma T12 and L5.  Her CSF protein and glucose were normal.

Pet. Ex. 2 at 143.  Petitioner was diagnosed with "paraparesis and hyperesthesia, seen by Neurology, and no significant cord compression or weakness and has recommended physical therapy and clear for discharge.  I have requested physical therapy.  *Id.*

Petitioner had a Home Health Certification Plan of Care to begin on February 26, 2016 and end on April 25, 2016.  Pet. Ex. 6 at 9.  Her principal diagnosis for in-home therapy was unspecified polyneuropathy.  *Id.*  The total number of visits authorized was 8.  *Id.* at 30.

On February 25, 2016, petitioner had a follow-up appointment following her hospitalization.  Pet. Ex. 2 at 291.  After a physical exam where she had a normal musculoskeletal normal range of motion and her coordination was noted as normal, she was diagnosed with, "Weakness of bilateral legs; lumbar disc degeneration; chronic back pain > 3 months; and low back pain."  *Id.* at 293.  Petitioner was given home exercise instructions for rehabilitation of a herniated disc.  *Id.* at 297.

Petitioner returned to the emergency department on February 29, 2016 with right arm pain and bruising.  Pet. Ex. 2 at 312.  Petitioner stated that she was worried she had a blood clot.  *Id.*  In the review of systems, petitioner was positive for myalgias, but negative for back pain and joint pain.  *Id.* at 313.

On May 4, 2016, petitioner was seen by Dr. Frederick Davis.  Pet. Ex. 2 at 391.  Her history is noted as, "[Petitioner] is a 40 year-old female with (B) UE and LE weakness due to medicine reaction."  *Id.*  Petitioner was requesting a four-wheel walker with a seat for stability.  *Id.* at 393.  At the physical therapist evaluation, it was noted that her primary diagnosis was "weakness of bilateral legs s/p flu shot."  *Id.*

One month later, petitioner sought treatment for right ear pain.  Pet. Ex. 2 at 421.  In the review of symptoms petitioner was positive for congestion and ear pain, but negative for back pain.  *Id.* at 422.

On January 5, 2017, petitioner sought treatment for low back pain radiating down her legs bilaterally.  Pet. Ex. 2 at 442.  She reported the pain worsening and increasing in severity.  *Id.*  Petitioner had tenderness "over the buttock over sciatic notch" and she had a positive straight leg raising test bilaterally[1].  *Id.* at 445.  She was assessed with lumbar radiculopathy.  Pet. Ex. 2 at 442.

---

[1] The straight leg test is a fundamental neurological maneuver during the physical examination of the patient with lower back pain aimed to assess the sciatic compromise due to lumbosacral nerve root irritation.  A positive straight leg raising test results from gluteal or leg pain by passive straight leg flexion with the knee in extension, and it may correlate with nerve root irritation and possible entrapment with decreased nerve extension.  *Straight Leg Raise Test*, G. Willhuber & N. Piuzzi, https://www.ncbi.nlm.nih.gov/books/NBK539717/ (accessed on Oct. 19, 2020).

## 2. Analysis

As the Vaccine Act lays out, a petition for compensation must include, "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury": 1) received a vaccine listed on the Vaccine Injury Table; 2) received the vaccination in the United States or under certain stated circumstances outside of the United States; 3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine; 4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and 5) has not previously collected an award or settlement of a civil action for damages for the same injury. § 300aa-11(c)(1).

In this case, petitioner submitted a vaccination record which satisfies elements 1 and 2. *See* Pet. Ex. 1. The problem for petitioner is the objective medical evidence does little to support vaccine causation *and* that petitioner experienced the residual effects of the alleged vaccine-related injury for more than six months.

Respondent filed a status report on March 27, 2019 requesting that petitioner obtain and file "any medical records providing proof that petitioner suffered from the residual effects of her alleged vaccine injury for more than six months (the current records contain medical visit notes after August 2016 that are *all unrelated to the sequelae* of the alleged vaccine injury)." Resp. Reply at 1. Respondent noted that the undersigned granted petitioner five extensions of time, to file any additional medical records for almost a year before an Order to Show Cause was issued. *Id.* at 2; *see also* Order to Show Cause (ECF NO. 21). Respondent contends that even though petitioner stated in her petition that she suffered the residual effects of her vaccine-related injury for more than six months, the objective medical evidence filed by petitioner clearly did not support this assertion. *Id.* at 4.

Petitioner argued that the medical records demonstrate that petitioner was hospitalized with complaints of numbness radiating from her low back to her ankles and weakness less than one-month after she received the flu vaccines in question. Pet. Reply at 1. Petitioner stated that "Dr. Gale suspected a possible reaction to her recent vaccine administration. Upon discharge, petitioner was recommended in home physical therapy." *Id.* at 2. Petitioner relies upon the fact that three months after discharge, her weakness was so bad that she requested and received a four-wheeled walker with a seat. *Id.*; *see also* Pet. Ex. 2 at 391. Petitioner continued, "There was a gap of treatment in the medical records until January 2017, at which point, petitioner reported low back pain radiating to her bilateral buttocks and back of legs, along with difficulty ambulating." *Id.* at 2. Petitioner also stated that counsel contacted her several times and stated that additional records were needed in support of her claim, but no such records could be found. *Id.*

Petitioner is correct that her treating physician, Dr. Gale, considered whether she had a reaction to her recent vaccinations and sent her to the hospital for further tests. Pet. Ex. 2 at 114. When she presented to the hospital on February 20, 2016, the attending physicians ran tests to evaluate the source of her pain and weakness. At the emergency department, petitioner was unable to perform straight leg raises which is suggestive of nerve compression in the lumbar

6

spine.  Transverse myelitis was ruled out by the MRI of her spine, but instead reveled L5-S1 disc desiccation, mild broad based central dorsal annular bulging with associated central dorsal annular tear.  *Id.* at 142.  Petitioner was treated with Gabapentin at the hospital and discharged two days later.  *Id.* at 141.  Her discharge summary included the findings of her lumbar spine MRI but did not make any further reference to the vaccinations she received on February 11, 2016.  Significantly, no diagnosis of Guillain Barre syndrome was made.  Rather, the MRI evidence and positive straight leg raises tests was suggestive of a lumbar spine pathology explanation for her symptoms.  Additionally, at petitioner's follow-up appointment on February 25, 2016, her primary care physician, Dr. Gloria Carreon did not associate any of petitioner's symptoms with GBS or a possible vaccine reaction.  *See* Pet. Ex. 2 at 297.  Instead, Dr. Carreon diagnosed petitioner with "Weakness of bilateral legs; Lumbar Disc Degeneration; Chronic Low Back Pain [greater than] three months; and low back pain.  *Id.* at 292.  Petitioner was given exercise instructions to treat a herniated disc.

Additionally, when petitioner presented to her primary care doctor's office on January 5, 2017, she was reporting the exact same symptoms that she reported on February 20, 2016 to Dr. Gale.  For example, on February 20, 2016, petitioner reported numbness radiating from lower back to bilateral ankles and recurrent back spasms, with pain radiating in the bilateral lower back region.  Pet. Ex. 2 at 113.  On January 5, 2017, petitioner reported lower back pain radiating to the bilateral buttock and back of the leg."  Pet. Ex. 2 at 443.  At the appointment on January 5, 2017, petitioner was diagnosed with lumbar radiculopathy.  *Id.* at 445.

The reasonable basis standard does not require petitioners to provide preponderant evidence of vaccine causation, but they need to offer something more than a mere scintilla of objective evidence to support the claim.  *Cottingham* at 1346.  Petitioner relies upon Dr. Gale's consideration of a "suspected" vaccine reaction to support vaccine-causation.  Pet. Reply at 7.  However, Dr. Gale's consideration of a vaccine-related injury at her initial hospitalization was simply that, a consideration.  When her MRI found significant issues with her spine, the focus of her treatment was not on a possible vaccine-related injury, but instead on managing her symptoms associated with her spinal column issues.  Aside from Dr. Gale's "consideration" of a temporal association of the onset of petitioner's pain to the receipt of her vaccinations, petitioner did not present evidence of vaccine-causation.

Additionally, the objective evidence filed failed to establish that petitioner suffered from an alleged vaccine related injury for more than six months.  On March 27, 2019, respondent filed a status report requesting that petitioner obtain and file "any additional medical records providing proof that petitioner suffered from the residual effects of her alleged vaccine injury for more than six months."  Resp. Status Rept. (ECF No. 8).  The respondent noted that the petitioner's medical records that were filed after August 2016 are "all unrelated to the sequelae of the alleged vaccine injury."  *Id.*  Petitioner then requested four extensions of time to file medical records to demonstrate that her alleged vaccine injury lasted for at least six months.  *See* Orders, May 14, 2019; June 17, 2019; July 16,2019; and Aug. 15, 2019 (all granting petitioner an additional thirty days to file updated medical records).  Then on September 16, 2019, petitioner filed a status report stating, "Petitioner has indicated that there are no additional records.  Counsel for petitioner requests 30 days to file a status report updating this Court on how she wishes to proceed."  Pet. Status Rept. (ECF No. 14).

A review of the objective evidence petitioner filed with her petition does not demonstrate that she suffered residual effects of her alleged vaccine-related injury for six months. The physical therapy records submitted indicates that home physical therapy was only authorized until April 25, 2016. Pet. Ex. 4 at 9.

Petitioner asserts that the continued use of an assistive walking device was evidence that her alleged injury lasted for a period of six months. Petitioner was deemed eligible for a four-wheel walker after a physical therapy evaluation on May 4, 2016. Pet. Ex. 2 at 391-95. However, the medical appointments between her May 4, 2016 physical therapy evaluation and January 5, 2017, are all unrelated to her alleged vaccine related injury. *Id.* at 400-36. As noted above, at the January 5, 2017 appointment, petitioner's symptoms were the same as when she presented on February 20, 2016 and she was diagnosed with lumbar radiculopathy without reference to the onset of these symptoms associated with her receipt of vaccinations. *See* Pet. Ex. 2 at 443. In sum, petitioner has presented no evidence that she suffered six months of sequelae, and as such, there is no reasonable basis for this claim set out in the petition.

### III.     Conclusion

In summary, petitioner has not established that she possessed a reasonable basis for the claims raised in the petition. This case contained little more than a passing reference to GBS based solely on the proximity of the onset of back and leg pain to a vaccination. Petitioner did not have a diagnosis of GBS or receive any treatment suggestive of GBS. Finally, this case clearly lacked evidence of six months of symptoms. Her lack of evidence on vaccine causation and the lack of six months of sequelae, when considered together, demonstrates that petitioner did not have reasonable basis to file her claim.

Based on the foregoing, I hereby **DENY** petitioner's motion for attorneys' fees and costs. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                                         **s/Thomas L. Gowen**
                                                         Thomas L. Gowen
                                                         Special Master